[No. 41672-3-I.    Division One.    July 26, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS RIVERS, *Appellant*.

Cox, J., concurs by separate opinion.

*Eric Broman* and *Eric J. Nielsen* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kristen E. Sweeney, Deputy*, for respondent.

BAKER, J. — Douglas Rivers was convicted of first degree assault and sentenced within the standard range. On appeal, Rivers argues that the prosecutor engaged in misconduct by making improper comments, primarily during clos-

ing argument, which prejudiced his right to a fair trial.[1] We agree, and therefore reverse.

## I

The victim of the assault was very intoxicated. He had allegedly been involved in an automobile accident and was knocked to the ground by the other driver before Rivers and three companions joined in the attack. The victim was seriously beaten and suffered permanent injuries.

A bus driver observed a portion of the attack. He testified that he saw four men attack one Asian man and that he heard threatening words. He could not specifically identify the attackers, but partially identified their clothing and the car they were in. He did not see their faces and intentionally avoided eye contact. He called 911, but did not get directly involved in the confrontation.

Rivers admitted that he was at the scene of the attack, but maintained that he had approached the victim to help him when the victim struck out at Rivers and his friends. Rivers denied that he kicked or hit the victim. Several witnesses testified to Rivers' reputation for honesty and peacefulness, including other alleged participants in the assault, and Rivers' religious adviser. Some of these witnesses were incarcerated in the county jail, and appeared at trial dressed in the distinctive inmate garb of orange coveralls.

During closing argument, the prosecutor utilized a theme that Rivers was part of a pack of attackers, commenting that "he is a vicious rocker, as were they. That's what the evidence shows, beyond a reasonable doubt." Describing the assault on a drunk and helpless victim, the prosecutor referred to Rivers and the others as "predators . . . [t]hey are nothing more than hyenas." He then proceeded to read a dictionary definition of the word "jackal," commenting that "[t]hat's what these four young men were. They were jackals."

---

[1]The State's attorney on appeal was not the deputy prosecutor who tried this case.

The prosecutor then attacked Rivers' character witnesses. He referred to the witnesses who testified in their jail garb as "the pajama crowd." A defense objection was inexplicably overruled. Apparently emboldened by his success, the prosecutor continued:

> Interestingly, the accounts that they gave were not inconsistent with each other and why is that? Because they have and you should recognize as these instructions direct you to, looking now at Instruction No. 1, they have a bias and interest, a prejudice in this case, as does, surprisingly, the defendant. . . .

> Can you imagine what would happen to them if their compatriots, who are wearing pajamas up in the King County hotel, found out that they came in here and testified against a guy?

> Mr. Taylor:   Objection, your Honor.

> Mr. Corscadden:   Can you imagine what would happen?

> Mr. Taylor:   That's calls for facts not in evidence as to what would happen to them with respect to them testifying against the defendant.

> The Court:   All right.

> Mr. Corscadden:   I think—

> The Court:   This is argument only. I am going to overrule the objection.

> Mr. Corscadden:   Can you imagine how they would be welcomed in the shower? Absolutely no incentive for them to come in here and say that the defendant was involved? . . .

## II

■ Generally "[g]reater latitude is given in closing argument than in cross examination" and counsel is entitled to "comment on a witness's veracity or invite the jury to make reasonable inferences from the evidence so long as counsel

does not express a personal opinion."[2] However, a prosecutor has a duty to the public to act impartially and in the interest of justice.[3] In the context of this responsibility, the prosecutor may not make heated partisan comments which appeal to the passions of the jury in order to procure a conviction at all hazards.[4]

In order to hold that there was reversible error from prosecutorial misconduct, we must find that the prosecutor's comments were both improper and that there is a substantial likelihood that they impacted the jury.[5] Rivers bears the burden of establishing the impropriety and prejudicial impact when considering the entire context of the record and circumstances at trial.[6]

This court has a responsibility to insist upon and enforce minimum standards of professionalism in the conduct of our system of criminal justice. The highly inflammatory comments utilized by the prosecutor in this case fall well below the standards appropriate to the conduct of the State's case. We cannot countenance such tactics, which

---

[2]*State v. Stover,* 67 Wn. App. 228, 232, 834 P.2d 671 (1992), *review denied,* 120 Wn.2d 1025 (1993). *See also State v. Stenson,* 132 Wn.2d 668, 727, 940 P.2d 1239 (1997), *cert. denied,* 523 U.S. 1008 (1998).

[3]*State v. Reed,* 102 Wn.2d 140, 147, 684 P.2d 699 (1984). *See e.g., The Function of the Prosecutor, in* Am. Bar Ass'n, ABA Standards for Criminal Justice Prosecution Function and Defense Function, Standard 3-1.2 (3d ed. 1993):

. . . .

(b) The prosecutor is an administrator of justice, an advocate, and an officer of the court; the prosecutor must exercise sound discretion in the performance of his or her functions.

(c) The duty of the prosecutor is to seek justice, not merely to convict.

. . . .

[4]*Reed,* 102 Wn.2d at 147.

[5]*State v. Hoffman,* 116 Wn.2d 51, 93, 804 P.2d 577 (1991).

[6]*Stenson,* 132 Wn.2d at 718-19; *Hoffman,* 116 Wn.2d at 93; *State v. Barrow,* 60 Wn. App. 869, 877, 809 P.2d 209, *review denied,* 118 Wn.2d 1007 (1991); *State v. Graham,* 59 Wn. App. 418, 425-26, 798 P.2d 314 (1990). If a defendant fails to object to or ask for a curative instruction for claimed misconduct, the error is waived "unless the 'prosecutorial misconduct is so flagrant and ill intentioned that no curative instruction could have obviated the prejudice engendered by the misconduct.' " *State v. Dennison,* 115 Wn.2d 609, 623, 801 P.2d 193 (1990) (quoting *State v. Belgarde,* 110 Wn.2d 504, 507, 755 P.2d 174 (1998)); *Graham,* 59 Wn. App. at 426.

were clearly intended to inflame the jury's passion and prejudice.

The error was not harmless. The State's burden to prove harmless error is heavier the more egregious the conduct is. The burden here is heavy indeed.

No one disputed that Rivers was present at the melee. The State's evidence was countered by the defendant's explanation of the events of the evening. The defendant's case hinged on his and his witnesses' credibility. The prosecutor attacked their credibility in an inappropriate manner, instead of adhering to his responsibility to utilize appropriate evidence that relates to the elements of the crime to persuade the jury that the State has met its burden of proof.[7] Instead of focusing the jury's attention properly on the elements of the crime and the State's burden of proof, the prosecutor resorted to ill-conceived rhetoric aimed squarely at the jury's passions.

We do not know whether the State would have succeeded without this inappropriate argument. We do know that this highly inappropriate conduct undermined the integrity of the criminal justice process to such an extent that justice was not done below.

Reversed.

ELLINGTON, J., concurs.

Cox, J. (concurring) — I concur with the majority. But I write separately to emphasize that the State's harmless error analysis is not supported by this record. We must reverse.

The comments by the prosecutor in this case during closing were clearly intended to inflame the passions and prejudices of the members of the jury. Thus, they were totally improper.

---

[7]*State v. Fleming*, 83 Wn. App. 209, 214-16, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997) ("The State must convict on the merits, and not by way of misstating the nature of reasonable doubt, misstating the role of the jury, infringing on the right to remain silent, and improperly shifting the burden of proof to the defense.").

The central question here is whether there was a substantial likelihood that those comments affected the verdict.[8] The record shows that there was such a substantial likelihood.

The majority focuses on the adverse effect of the prosecutor's comments on the credibility of Rivers' witnesses. But in reviewing the entire record, as we must in order to determine whether the improper comments warrant reversal,[9] there is an additional problem. The State's chief witness was the only neutral observer of the incident. He was the one who called the police when he witnessed the assault. He also identified Rivers and his accomplices by their clothing and vehicle when the police apprehended them shortly after the assault. In short, without that witness, the State would likely not have had either a suspect or a case.

But there were some problems with the testimony of this witness. During cross-examination, Rivers challenged the witness's identification of Rivers as one of those involved in the assault. Moreover, the witness admitted during trial that he had earlier pleaded guilty to two counts of felony theft.[10] During closing, the defense argued that these prior convictions affected the witness's credibility. Finally, the jury could not reach a verdict on the robbery count arising out of the same incident.

It is entirely reasonable, on this record, that some jurors may have been inclined to disbelieve the State's chief witness. Thus, the State's argument that the misconduct was harmless error because the evidence supporting a finding of guilt was overwhelming is simply not supported by this record.

A statement from our Supreme Court is particularly appropriate for this case:

---

[8]*State v. Belgarde*, 110 Wn.2d 504, 508, 755 P.2d 174 (1988) (citing *State v. Charlton*, 90 Wn.2d 657, 664, 585 P.2d 142 (1978)).

[9]*Charlton*, 90 Wn.2d at 664.

[10]ER 609.

In spite of our frequent warnings that prejudicial prosecutorial tactics will not be permitted, we find that some prosecutors continue to use improper, sometimes prejudicial means in an effort to obtain convictions. In most of these instances, competent evidence fully sustains a conviction. Thus, we are hard pressed to imagine what, if anything, such prosecutors hope to gain by the introduction of unfair and improper tactics.

It has been thoughtfully observed that

"(i)f prosecutors are permitted to convict guilty defendants by improper, unfair means, then we are but a moment away from the time when prosecutors will convict innocent defendants by unfair means."[11]

On this record, the only proper action for this court to take here is to reverse. Accordingly, I concur.