IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33231-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY ALLEN ROETGER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Jeffrey A. Roetger appeals his convictions for first, second, and third degree rape of a child and two counts of first degree child molestation involving his step daughter, A.K., and her friend, A.C. He contends prosecutorial misconduct, ineffective assistance of counsel, and denial of his right to confront witnesses. In his pro se statement of additional ground for review (SAG), Mr. Roetger reiterates some of his appellate counsel's concerns and adds cumulative error. We affirm.

FACTS

Mr. Roetger and Kristine Roetger met in June 2001 and were married in June 2006. A.K. was 10 when her mother and Mr. Roetger married and her best friend was

A.C. They spent significant time at each other's houses and often had sleepovers. The pair later drifted apart as they entered junior high school.

A.K. described a long history of abuse by Mr. Roetger. When A.K. was in the fourth grade, she remembers him touching her breasts over her clothes. On one occasion that year, Mr. Roetger held her down in his bedroom and touched her with his penis. A.K. also reported that when she was 12 years old, Mr. Roetger would come into her room and touch her over and under her clothes. A.K. described a specific incident where Mr. Roetger took her to the warehouse where he worked and touched her vagina with both his fingers and his penis. A.K. also recalled when she was 12 years old, Mr. Roetger entered her vagina with his penis. A.K. described Mr. Roetger putting his fingers inside her vagina and holding her down and using his mouth to touch her vagina.

A.K.'s friend, A.C., detailed an incident where she went with the Roetgers to Ocean Shores and Mr. Roetger took her into the deep end of the hotel pool to teach her how to swim. While in the pool, Mr. Roetger touched her vagina over her bathing suit. A.C. was 10 years old at the time. A.C. went to Wild Waves Theme Park with the Roetgers, where Mr. Roetger again touched her vagina over her bathing suit. A.C. described a time in fifth grade when she and A.K. were at Mr. Roetger's work and Mr. Roetger asked the girls to lift their shirts. That same year, A.C. recalled riding on Mr. Roetger's lap while he drove his car, and Mr. Roetger rubbed her leg and breasts while she was on his lap. A.C. witnessed Mr. Roetger doing the same to A.K. A.C. testified

2

that in the time she knew Mr. Roetger, he touched her breasts and vagina about five times over her clothing.

Neither A.K. nor A.C. initially reported these incidents. A.C. testified she was embarrassed, scared, and did not think anyone would believe her because Mr. Roetger told her no one would. A.K. similarly related she was too scared to say anything because Mr. Roetger told her not to tell anyone. Two to three years later, and after the girls were no longer close friends, A.C.'s mother overheard a conversation between A.C. and two other friends. Later, A.C.'s mother asked her about the conversation and A.C. confided in her mother, "That [A.K.] had been raped" and then told her mother several instances where Mr. Roetger had touched her inappropriately. Report of Proceedings (RP) at 152. A.C. told her mother she had witnessed Mr. Roetger inappropriately touch A.K. A.C.'s mother immediately reported the abuse and called A.K.'s mother. A.K.'s mother did not believe the allegations; A.K. moved in with her father.

The State charged Mr. Roetger with three counts of first degree rape of a child as to A.K., one count of first degree child molestation as to A.K., one count of first degree child molestation as to A.C., one count of second degree rape of a child as to A.K., and one count of third degree rape of a child as to A.K.

Before trial, the State moved to exclude alleged past sexual abuse of A.K. by another family member as not probative and unfairly prejudicial. The trial court noted

3

the case did not fall under the Rape Shield Statute, RCW 9A.44.202, but determined the evidence was not relevant under ER 403 and excluded it.

At trial, both A.K. and A.C. testified against Mr. Roetger. Mr. Roetger testified, denying the allegations and challenging A.K. and A.C.'s credibility. A.K.'s mother testified for the defense.

During closing and rebuttal argument, the prosecutor partly argued:

> Those are the incidents. You find any one of those happened, any one of those two beyond a reasonable doubt, then he is guilty. They both happened. He is guilty of molesting [A.C.].
>
> . . . .
>
> The simple fact is she didn't make this up. It happened to her at the hands of the defendant. The defendant repeatedly violated her, over and over and over. For that, he should be held responsible. For that, he is guilty of all seven counts and the aggravators.

RP at 403, 409. Later the prosecutor added:

> Somebody is uncredible [sic] here. It is the defendant and his wife, the stories you heard from them. They are just that, stories.
>
> . . . .
>
> You judge credibility. Look at how they testified. What you saw from [A.K.] was real emotion that was not faked. She was giving you the real story. It was emotional for her. She had problems getting it out. That was real. You looked at [A.C.]. When [A.C.] was testifying, defense counsel was standing in a manner that made her eyesight go to the defendant. She was in fear. She asked him to move for that reason so she didn't have to look over there. That is real fear. That is not something that is faked.

RP at 436, 438-39. Later, the prosecutor argued:

4

> Oh, I think [A.K.] is getting it smacked right in her face.
> [A.K.] understands exactly the reality of her situation.
> Her mom has basically disowned her as a result of this.
> Counsel said, well, one of the things, one of the things he
> pointed out is sometimes kids make this up so that
> mommy will kick daddy out of the house. Well, that's not
> what happened here. This came to light and [A.K.] got the
> boot right away. [A.K.'s mom] wasn't even truthful about
> what happened there on the stand. Trying to make herself
> look better. We will get to that.

RP at 439-40. The prosecutor continued:

> The stories [A.K. and A.C.] give you are consistent. They
> are consistent in that it happened. These acts happened.
> The defendant is living a nightmare for three years. He
> raped and molested two girls. They have lived with that
> since they were children. I don't care about his nightmare.
> Neither should you.

RP at 441. Defense counsel objected to the comment about not caring about Mr.

Roetger's nightmare as inflaming the jury. The court sustained the objection. Next, the

prosecutor stated:

> This is not embellishment. This is what happened to her.
> That's what she's telling you.
>
> . . . .
>
> Now, I have no doubt at some point [Mr. Roetger] did
> that when they learned to swim. That's not what was
> happening on these occasions.
>
> . . . .
>
> Obviously [Mr. Roetger] didn't have that conversation
> with her. If it truly happened like he said it did, then you
> would tell the mom. He didn't. Because it didn't happen
> that way.

5

RP at 442, 446, 448. While discussing A.K.'s mother's testimony, the

prosecutor discussed the mother claiming she still had a relationship with

A.K. but then retracting that statement:

> . . . .
> She's doing that to make herself look good. That is the only
> reason she did that. No point was that the truth. No point
> was she truthful here on the stand.

RP at 449. Defense counsel objected based on comment on the credibility of a witness.

The court sustained the objection. Lastly, the prosecutor stated:

> The defendant is guilty. There is no reason why [A.C.] and A.K.] would
> ever go through all of this to make it up. What they told you was what happened
> to them. [A.K.] was systematically, and over the course of years, sexually
> abused by that defendant. That is what happened. If you believe them, if you
> believe what they told you on the stand, the defendant is guilty. What they told
> you was the truth. What they told you happened. The defendant is guilty. That
> is reasonable doubt. That is all I have to prove. I don't have to get everything
> defense counsel says. Oh, well, maybe I could have gotten medical records.
> That is not what reasonable doubt is. Reasonable doubt is your belief in truth of
> charges. When you listen to [A.K.], when you listen to [A.C.], what they are
> telling you is what happened to them.

RP at 451-52.

The jury found Mr. Roetger guilty of one count of first degree rape of a child

(A.K.), one count of second degree rape of a child (A.K.), one count of third degree rape

of a child (A.K.) and two counts of first degree child molestation (A.K. and A.C.). The

jury found Mr. Roetger not guilty of the remaining counts. He appealed.

6

ANALYSIS

A. Prosecutorial Misconduct

The issue is whether Mr. Roetger was denied a fair trial based on prosecutorial misconduct. He contends the prosecutor wrongly commented on witness credibility during his closing remarks. Because defense counsel did not object to a majority of those comments, Mr. Roetger contends he was denied effective assistance of counsel.

Prosecutorial misconduct may deprive a defendant of his right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). To prevail on a claim of prosecutorial misconduct, Mr. Roetger must establish that the conduct was both improper and prejudicial. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prosecutorial misconduct is prejudicial where a substantial likelihood exists the improper conduct affected the jury's verdict. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007). But where, as here, defense counsel fails to object, any error is waived unless the conduct was so "flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by admonition to the jury." *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

Proper and timely objections provide the trial court an opportunity to correct the misconduct and caution jurors to disregard it, preventing abuse of the appellate process and saving substantial time and expense of a new trial. *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015) (citing *State v. Emery*, 174 Wn.2d 741, 761-62, 278 P.3d 653 (2012)). In determining if prejudice could have been

7

neutralized by an admonition to the jury, we focus less on whether the misconduct was flagrant or ill-intentioned and more on whether any misconduct could have been obviated by a curative instruction. *Emery*, 174 Wn.2d at 762.

The defendant bears the burden of establishing improper arguments and their prejudicial effect. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994). Even if improper, the prosecutor's remarks are not grounds for reversal "if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *Russell*, 125 Wn.2d at 86. We review the allegedly improper comments in the context of the entire closing argument, the issues presented, the evidence addressed, and the jury instructions. *Russell*, 125 Wn.2d at 85-86.

Mr. Roetger argues 11 remarks during closing argument were improper comments on witness credibility. Two of those comments were objected to by counsel; one of those two, however, was not objected to for the same reason as Mr. Roetger raises on appeal (i.e., defense counsel objected to the comment about not caring about Mr. Roetger's nightmare as inflaming the jury). Thus, the sole comment that we review under the "improper and prejudicial" standard is the prosecutor's comment that the purpose of A.K.'s mother's testimony that she has a good relationship with her daughter was "to make herself look good. That is the only reasons she did that. No point was that the truth. No point was she truthful here on the stand." RP at 449; *see Fisher*, 165 Wn.2d at 747; RP at 449. The court sustained the defense objection.

8

The court instructed the jury to "disregard" any inadmissible evidence or remarks. Clerk's Papers (CP) at 150. Further, the court instructed the jury it was "the sole judge[] of the credibility of each witness." CP at 151. Further still, the court instructed the jury, "The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence." CP at 62.

Prejudice occurs where a substantial likelihood exists the improper conduct affected the jury's verdict. *Yates*, 161 Wn.2d at 774. Here, defense counsel objected to a comment on A.K.'s mother's truthfulness, the court sustained the objection, and the court instructed the jury to disregard inadmissible comments. We presume the jury followed the trial court's instructions. *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991). Therefore, since we presume the jury disregarded the remark, Mr. Roetger cannot show he was prejudiced by it. Accordingly, Mr. Roetger's challenge to this comment does not amount to reversible error.

The remaining 10 challenged remarks on appeal are reviewed under the "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by admonition to the jury" standard. *Stenson*, 132 Wn.2d at 719. The prosecutor commented, "He is guilty of molesting [A.C.] . . . .[A.K.] didn't make this up . . . . Somebody is uncredible [sic] here . . . . You judge credibility. Look at how they testified. What you saw from [A.K.] was real emotion that was not faked. She was giving you the real story. . . . This came to light and [A.K.] got the boot right

9

away. [A.K.'s mom] wasn't even truthful about what happened there on the stand . . . . The stories [A.K. and A.C.] give you are consistent. They are consistent in that it happened. These acts happened . . . . This is not embellishment. This is what happened to [A.K.] . . . . There is no reason why [A.C.] and [A.K.] would ever go through all of this to make it up." RP at 403, 409, 426, 438, 440-41, 451.

It is improper for a prosecutor to vouch for witness credibility because the trier of fact has sole authority to assess the credibility of witnesses. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). Vouching may occur in two ways, "the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." *State v. Allen*, 161 Wn. App. 727, 746, 255 P.3d 784 (2011).

A prosecutor has wide latitude to draw reasonable inferences from the evidence. *Stenson*, 132 Wn.2d at 727. It is not misconduct for a prosecutor to argue a witness is truthful based on inferences from the evidence. *State v. Rivers*, 96 Wn. App. 672, 674-75, 981 P.2d 16 (1999). "'Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.'" *State v. McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006) (quoting *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)).

This case centered on witness credibility. Mr. Roetger asserted both A.K. and A.C. were lying and presented evidence to support his defense. Thus, the prosecutor's advice to the jury to believe A.K. and A.C.'s testimony were proper comments on

10

witness credibility based on the evidence, not personal opinion. Furthermore, defense counsel invited comments relating to the credibility of the witnesses when he built his case on the theory that A.K. and A.C. were not telling the truth.

Mr. Roetger directs us to our Supreme Court's recent opinion in *Walker*, where the court reversed the defendant's conviction based on prosecutorial misconduct. 182 Wn.2d at 485. But, there, the prosecutor composed a PowerPoint presentation with multiple slides containing altered versions of admitted evidence to support the State's theory of the case, presented derogatory depictions of the defendant, and expressed personal opinions on the defendant's guilt. *Id.* Our case is distinguishable.

Given all, we conclude Mr. Roetger fails to show the prosecutor's comments were so "flagrant and ill-intentioned" that they "evince[d] an enduring and resulting prejudice that could not have been neutralized by admonition to the jury." *Stenson*, 132 Wn.2d at 719. Accordingly, his prosecutorial misconduct argument fails.

Alternatively, Mr. Roetger contends his attorney provided ineffective assistance of counsel by failing to object to the prosecutor's remarks during closing argument. To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness. *Stenson*, 132 Wn.2d at 705-06. To satisfy the prejudice prong, a defendant must show a "reasonable probability that, except for counsel's unprofessional

11

errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

We strongly presume counsel provided effective assistance. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003). To rebut this presumption, a defendant bears the burden of establishing the absence of any "'conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Here, Mr. Roetger has not shown defense counsel lacked any conceivable and legitimate reason not to object or that if his attorney had objected to the 10 remarks during closing argument, the result of the trial would have been different.

## B. Confrontation

The issue is whether Mr. Roetger was denied his right to confront witnesses. He contends his Sixth Amendment right to confront A.K. was violated when the court excluded evidence she was allegedly molested in the past by another family member.

The confrontation clause guarantees a criminal the right to confront witnesses against him or her in a criminal prosecution. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Constitutional issues, such as the potential violations of the Sixth Amendment right to confront witnesses, are subject to de novo review. *State v. Price*, 158 Wn.2d 630, 638-39, 146 P.3d 1183 (2006).

The right to cross-examine adverse witnesses is not absolute. "The confrontation right and associated cross-examination are limited by general

12

considerations of relevance." *State v. Darden*, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002) (citing ER 401, ER 403). The right is also limited by the Rape Shield Statute, RCW 9A.44.020, that excludes evidence of a victims' prior sexual behavior if offered to attack the credibility of the victim. We review the trial court's limitation of the scope of cross-examination for an abuse of discretion. *Darden*, 145 Wn.2d at 619. Discretion is abused if it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Before trial, the State successfully requested exclusion of past alleged sexual abuse of A.K. by another family member. The court declined to apply the Rape Shield Statute, RCW 9A.44.202, but determined the evidence was not relevant under ER 403, reasoning, "in balancing the probative value that has been presented to me versus unfair prejudice which involves confusing issues, misleading the jury, I don't see a lot of probative value that has been presented to me at this point." RP at 53.

Under ER 403, evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value. The trial court has wide discretion in balancing the probative value of evidence against its potential prejudicial impact. *State v. Coe*, 101 Wn.2d 772, 782, 684 P.2d 668 (1984).

Mr. Roetger argues the excluded evidence was admissible to show A.K. learned about sexual acts from another source. *See State v. Carver*, 37 Wn. App. 122, 124-25, 678 P.2d 842 (1984) (evidence of victims' prior sexual abuse relevant to rebut inference that they would not know about such sexual acts unless they had experienced them

13

with defendant). But, the *Carver* court reversed the trial court's exclusion of prior abuse evidence because the victims were "very young girls" and the inference was they could solely have known about sexual acts from the defendant. *Id.* at 124-25. A.K. and A.C., although young at the time of the incidents, were in high school when they reported the abuse and adults by the time trial began. Thus, the risk of the jury inferring that the only knowledge of sexual acts the two adults had was because of Defendant was not present. Therefore, *Carver* is factually distinct from the present case,

Here, the weighing of evidentiary principles -- relevance, probative value, and prejudice -- shows the decision was not made by the trial court for untenable reasons. The court properly considered the evidence and reasonably concluded the evidence should not be admitted. Given all, the court had tenable grounds to exclude evidence of alleged prior sexual abuse. Accordingly, we conclude the court's ruling does not violate the confrontation clause, and, therefore, does not warrant reversal.

## C. SAG

In his pro se SAG, Mr. Roetger reiterates appellate counsel's adequately addressed confrontation arguments. We are not required to address it further. *See* RAP 10 .10(a) (providing the purpose of an SAG is to "identify and discuss those matters that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel"). The remaining issue is whether cumulative error denied Mr. Roetger's a fair trial. The cumulative error doctrine mandates reversal where the combined effect of several nonreversible errors denied the defendant a fair trial.

14

No. 33231-4-III
*State v. Roetger*

*State v. Davis*, 175 Wn.2d 287, 345, 290 P.3d 43 (2012), *cert. denied*, 134 S. Ct. 62

(2013). Having identified no errors that occurred during Mr. Roetger's trial, this court

should decline to grant relief under the cumulative error doctrine.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

15