IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37894-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON D. WAITS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Following a jury trial, Jason Waits was convicted of child molestation in the first degree and attempted child molestation in the first degree. He was sentenced to imprisonment for 89 months to life, subject to the Indeterminate Sentence Review Board (ISRB), ordered to obey numerous community custody conditions, and pay various legal financial obligations.

Mr. Waits appeals, arguing: (1) his right to a speedy trial under CrR 3.3 was violated; (2) he was twice deprived of his right to confer privately with his trial counsel; (3) the prosecutor committed multiple acts of misconduct; (4) he was afforded ineffective

assistance of counsel; (5) cumulative errors deprived him of a fair trial; and (6) certain

community custody conditions and legal financial obligations were improperly ordered

against him.  Mr. Waits alleges four additional errors in a statement of additional grounds

for review (SAG).

We affirm Mr. Waits' convictions and sentence and remand for the limited

purpose of striking certain community custody conditions and legal financial obligations

from the judgment and sentence.

## BACKGROUND

On May 27, 2019, Audrie Eckerle, Mr. Waits' cohabitant, contacted police to

report that Mr. Waits had engaged in three instances of sexual misconduct with her five-

year-old daughter, S.Y.,[1] the day prior.  Specifically, Ms. Eckerle claimed that she peered

through a crack in the bathroom door on May 26 and witnessed Mr. Waits on his knees

next to the bathtub where S.Y. was sitting.  Ms. Eckerle testified Mr. Waits' shorts were

pulled down to his knees, and he was attempting to force his erect penis into S.Y.'s

mouth.  Later that evening, while Ms. Eckerle, Mr. Waits, and S.Y. were in bed together,

---

[1] To protect the privacy interests of S.Y., we use her initials throughout this opinion.  Gen. Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), ttps://www.courts.wa. gov/appellatetrial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

Ms. Eckerle noticed S.Y. was "squirming and giggling." Rep. of Proc. (RP)[2] at 175. She pulled back the covers and found S.Y.'s panties were down, her nightgown up, and Mr. Waits had one hand on S.Y.'s vagina and the other hand on his erect penis. Ms. Eckerle testified that Mr. Waits claimed, "he thought that that was [Ms. Eckerle] he was touching, and he was so sorry and he didn't mean to." RP at 176. Mr. Waits repeatedly apologized before returning to sleep.

Officer Matthew Malakowsky of the Clarkson Police Department responded to Ms. Eckerle's call. After taking a verbal and written statement from Ms. Eckerle, Officer Malakowsky rapped on the front door of Mr. Waits' home. Ex. P-1 at 00:30:44. After a four-minute delay, Mr. Waits opened the door and spoke with Officer Malakowsky. Ex. P-1. Officer Malakowsky advised Mr. Waits that the interaction was being recorded and read him the *Miranda*[3] warnings. Mr. Waits stepped onto his porch and closed the door behind him. Ex. P-1. Mr. Waits told officers he did not wish to waive his rights, but he would answer their questions. Mr. Waits' answers to Officer Malakowsky's questions were inconsistent, and his demeanor appeared to change as the questioning progressed. After about a 30-minute conversation, Officer Malakowsky arrested Mr. Waits.

---

[2] Unless otherwise stated, "RP" refers to the reconstructed transcript filed with this court on December 1, 2023.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 37894-2-III
*State v. Waits*

The State charged Mr. Waits with attempted rape of a child in the first degree, child molestation in the first degree, and attempted child molestation in the first degree. Mr. Waits appeared for a probable cause hearing without an attorney on May 28, 2019. After making a finding of probable cause, the court set Mr. Waits' bond at $50,000, ordered him not to have any contact with S.Y., appointed him an attorney, and scheduled an arraignment for June 3, 2019. For brevity and clarity, Mr. Waits' scheduled court appearances and related delays are addressed in the analysis below.

Mr. Waits' charges were tried to a jury. During voir dire, the prosecutor shared a personal story with the venire about working a graveyard shift at a convenience store while in law school. During the evidentiary portion of the trial, the State presented the testimony of S.Y., among other witnesses. When S.Y. finished testifying, the prosecutor stated to her, "Thank you. I don't have any more questions for you. You did great." RP at 225. During the State's closing and rebuttal arguments, the prosecutor presented several arguments Mr. Waits claims were improper, among which was the story about working a graveyard shift from voir dire. The prosecutor's arguments are detailed in the analysis below.

Ultimately, Mr. Waits was found not guilty of attempted rape of a child in the first degree but guilty of child molestation in the first degree and attempted child molestation in the first degree. Mr. Waits was later sentenced to 89 months to life on the charge of child molestation in the first degree and 66 months to life on the charge of attempted

4

child molestation in the first degree, subject to the ISRB. The court ordered Mr. Waits to pay a victim penalty assessment (VPA), a DNA collection fee, S.Y.'s counseling fees, the cost of polygraph testing, and interest on nonrestitution legal financial obligations. The court further ordered Mr. Waits not to have contact with minors without permission from his community custody officer and not to possess or consume controlled substances without a prescription from a licensed practicing physician, among other requirements. Although the trial court did not enter any findings as to whether Mr. Waits possessed the current or future ability to pay the legal financial obligations, he was found indigent for purposes of this appeal.

Mr. Waits timely appeals.

## ANALYSIS

WHETHER MR. WAITS' RULE-BASED RIGHT TO A SPEEDY TRIAL WAS VIOLATED

Mr. Waits argues his rule-based right to a speedy trial, under CrR 3.3(b)(1), was violated when the trial court struck his initial trial setting and did not reschedule a trial date until the time for trial had expired. We disagree.

We review ruled-based speedy trial challenges de novo. *State v. Kenyon,* 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). Court rule interpretation is a question of law and subject to de novo review. *Gourley v. Gourley*, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006). The meaning of court rules is determined in the same manner as the meanings of statutes, in effect by applying statutory interpretation principles. *Id.* To that end, when

the meaning of a rule is plain on its face, the court must give effect to that plain meaning, assuming that plain meaning was the drafter's intent. *Id.*

We review a trial court's decision to grant a continuance under the abuse of discretion standard. *State v. Flinn*, 119 Wn. App. 232, 243, 80 P.3d 171 (2003). A court "abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable." *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). When defense counsel requests a delay or agrees to a delay, it is chargeable to the defendant. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 920, 952 P.2d 116 (1998).

CrR 3.3(h) provides that "[n]o case shall be dismissed for time-to-trial reasons except as expressly required by this rule." The rule provides a single circumstance when dismissal is required—when "[a] charge [is] not brought to trial within the time limit determined under this rule." CrR 3.3(h).

Mr. Waits argues he is entitled to dismissal because the trial court failed to comply with two provisions of CrR 3.3. First, Mr. Waits contends the court continued his trial date without setting a "specified date" for trial as required by CrR 3.3(f)(2). Br. of Appellant[4] at 1. Secondly, Mr. Waits asserts the court failed to "set a new trial date" after his trial date was continued, as required by CrR 3.3(d)(2). *Id.* at 7. Thus, Mr. Waits

---

[4] This opinion cites to the brief of appellant filed on April 18, 2024.

asserts, "no valid excluded period resulted and the time for trial expired on August 2, 2019." *Id.* at 26-27.

In giving effect to the plain language of CrR 3.3, dismissal is not the appropriate remedy for the trial court's lack of adherence to the provisions of the rule. Instead, dismissal is allowed *only* when a charge is not brought to trial within the time limitations of the rule. CrR 3.3(h). We therefore disagree with Mr. Waits' argument that the trial court's lack of strict compliance with the provisions of CrR 3.3(d)(2) and CrR 3.3(f)(2) warrants dismissal. However, if the trial court's deviation from the rule violated Mr. Waits' right to a speedy trial, dismissal may be warranted.

CrR 3.3(b)(1) requires a defendant who is detained in jail to be brought to trial within 60 days from the date of arraignment, subject to numerous exceptions. One exception is "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). In such an event, "the court shall set a new date for trial which is within the time limits prescribed and notify each counsel or party of the date set." CrR 3.3(d)(2). The time period of the continuance is excluded when computing the time for trial. CrR 3.3(e)(3). In addition to excluding the time period, CrR 3.3(b)(5) provides, "the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." Further, if a defense attorney is disqualified, a new commencement date is set on the date of the disqualification. CrR 3.3(c)(2)(vii).

Mr. Waits does not dispute that the trial court properly set an initial trial date as required by CrR 3.3(d)(1) nor that his original trial setting was set within the parameters of CrR 3.3(b)(1). Rather, in asserting a speedy trial violation, Mr. Waits focuses on the period between July 15, 2019, when his attorney successfully moved to continue the trial date set for July 25, and August 2, 2019, when Mr. Waits claims his time-for-trial period expired. Thus, Mr. Waits argues, any trial date beyond August 2 was "beyond the time for trial limits set forth in CrR 3.3." Br. of Appellant at 27.

Mr. Waits was arraigned on June 3, 2019. Because Mr. Waits was detained in jail, the initial expiration of his rule-based time for trial was August 2. A pretrial hearing was held on July 15, and defense counsel informed the court that she had another trial scheduled for July 25 and a major trial in Columbia County in August. The State reported it was unavailable between August 19 and September 2.

Due to defense counsel's conflicts, the court found "good cause for continuance," struck the July 25 trial date, and, by agreement of the parties, scheduled a "Re-setting" hearing for August 5. Clerk's Papers (CP) at 185. Under CrR 3.3(e)(3), the time between July 25 and September 3 is an excluded period. Further, when a court determines a continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense, the allowable time for trial "shall not expire earlier than 30 days after the end of that excluded period." CrR 3.3(b)(5). Therefore, Mr. Waits' time for trial would have expired 30 days from September 3.

8

On September 23, Mr. Waits requested his attorney be disqualified from representing him due to a conflict. The court granted Mr. Waits' motion and appointed a new attorney. The disqualification of Mr. Waits' attorney spawned a new commencement date, which "shall be the date of disqualification." CrR 3.3(c)(2)(vii). With a new commencement date of September 23, the expiration for Mr. Waits' time for trial extended to November 22.

Because Mr. Waits claims any trial date after August 2 was outside his rule-based time for trial, any subsequent setting would have violated CrR 3.3. Therefore, we need not address any delays beyond August 2. Regardless of whether the trial court failed to set a specific date for trial following a continuance, the time periods Mr. Waits complains of were either excluded periods under CrR 3.3(e)(3), allowable time after an excluded period under CrR 3.3(b)(5), or caused the commencement date to be reset under CrR (c)(2)(vii). Consequently, Mr. Waits' rule-based right to a speedy trial was not violated. CrR 3.3 limits dismissal for violations of the rule to "charge[s] not brought to trial within the time limit determined under this rule." CrR 3.3(h). Although the trial court deviated from the provisions of CrR 3.3(d)(2) and (f)(2), because Mr. Waits' rule-based time for trial was not violated, dismissal is not allowed under the plain language of the rule.

9

WHETHER MR. WAITS WAS DEPRIVED OF THE RIGHT TO CONFER PRIVATELY WITH COUNSEL

Mr. Waits contends his constitutional right to confer with his attorney was violated when he appeared by videoconference for two pretrial hearings while physically separated from his attorney with no means of private communication. We agree Mr. Waits' right to counsel was violated, but deem any error harmless under the constitutional harmless error analysis.

As an initial matter, Mr. Waits did not preserve the alleged error for review. Generally, unpreserved errors are not subject to appeal. RAP 2.5(a). Nevertheless, a manifest error affecting a constitutional right may be reviewed for the first time on appeal. RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007).

The Sixth Amendment to the United States Constitution, and article I, section 22 of the Washington Constitution guarantee an accused assistance of counsel during critical stages of the litigation. *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009). "A critical stage is one 'in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.'" *Id*. at 910 (quoting *State v. Agtuca*, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974)). A pretrial hearing is a critical stage of the litigation. *State v. Schlenker*, 31 Wn. App. 2d 921, 939, 553 P.3d 712 (2024). Mr. Waits had a constitutional right to assistance of counsel at his pretrial hearings.

10

Mr. Waits appeared by videoconference for two pretrial hearings: one on July 15, 2019, and the second on August 5, 2019. At both hearings, Mr. Waits appeared from jail and was separated from his attorney who was physically present in the courtroom. The trial court neglected to establish any ground rules for how Mr. Waits could confer privately with his attorney at both hearings. Hence, Mr. Waits has demonstrated he was twice denied access to counsel, constituting errors of a constitutional dimension.

In addition to establishing the error is of a constitutional dimension, RAP 2.5(a)(3) requires Mr. Waits to also establish the error was manifest. An error is manifest if the appellant makes a "plausible showing" that the asserted error had practical and identifiable consequences in the trial of the case. *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). "To determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). The question and analysis of manifest error differs from the analysis used to determine whether an error warrants a reversal. *Id.*

The trial court's failure to allow Mr. Waits to confer privately with his attorney during the pretrial hearings amounts to identifiable and unmistakable errors that the trial court could have foreseen and should have remedied even without an objection. A trial judge is tasked with ensuring that a criminally accused and their attorney have the

11

opportunity to engage in private consultation. *State v. Anderson*, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021). This includes the ability for private and continual discussions between the accused and their attorney. *State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d 694 (1981). Upon recognizing Mr. Waits' inability to privately confer with his attorney, the trial court should have taken measures to correct the error. Thus, the error was manifest.

Since Mr. Waits has met his burden of showing the existence of a constitutional error that is manifest, we next engage in a constitutional harmless error analysis. *Anderson*, 19 Wn. App. 2d at 564. Under the constitutional harmless error analysis, we presume prejudice. *Id.* Reversal is mandated unless the State proves the constitutional error did not contribute to the verdict beyond a reasonable doubt. *State v. Orn*, 197 Wn.2d 343, 359, 482 P.3d 913 (2021); *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019). This heavy burden is placed on the State to deter conduct that undermines the principle of equal justice. *State v. Jackson*, 195 Wn.2d 841, 856, 467 P.3d 97 (2020).

Here, we conclude that the State has met its burden of showing the error was harmless beyond a reasonable doubt. Although Mr. Waits did not consent to appear by videoconference and was unable to privately and continually communicate with his attorney without interrupting the proceedings, neither the July 15 nor the August 5 videoconference hearings contributed to the verdict.

12

At the July 15 hearing, Mr. Waits' counsel moved for a continuance of the July 25 trial date due to a conflict in her schedule. Under CrR 3.3(e)(3), a continuance is an excluded period, not requiring a defendant to waive his right to a speedy trial. Similarly, the court scheduled a CrR 3.5 hearing during the August 5 hearing and noted that Mr. Waits' attorney was unavailable for trial during the month of August. Again, this was an excluded period under CrR 3.3(e)(3) and was not dependent on Mr. Waits waiving his right to a speedy trial.

The sole issue presented at both pretrial hearings was scheduling a realistic trial date given the schedule of defense counsel and the need for two evidentiary hearings. Regardless of whether Mr. Waits could have privately and continuously communicated with his attorney, the outcome of both hearings would have been unaffected due to his attorney's unavailability for trial as well as the need for a CrR 3.5 hearing and child hearsay hearing.

We are persuaded beyond a reasonable doubt that Mr. Waits' inability to privately and continuously confer with his attorney during the July 15 and August 5 hearings did not contribute to the verdict. The constitutional error was harmless.

WHETHER THE PROSECUTOR ENGAGED IN ACTS OF MISCONDUCT

Mr. Waits asserts the prosecutor engaged in misconduct by presenting knowingly objectionable questions and by advancing improper arguments that, when viewed

individually and collectively, created a substantial likelihood of affecting the jury's verdict. We disagree.

On a claim of prosecutorial misconduct, the defendant bears the burden of showing that the prosecutor's remarks were both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). In determining whether the State's conduct rises to the level of misconduct, we examine the conduct in the context of the entire trial, including the evidence presented, the arguments presented, the issues in the case, the evidence addressed in the argument, and the court's instructions to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Even if a prosecutor's comments are improper, the misconduct does not require reversal unless the "court determines there is a substantial likelihood the misconduct affected the jury's verdict." *Stenson*, 132 Wn.2d at 719. In presenting its argument to the jury, a prosecutor enjoys wide latitude "in drawing and expressing reasonable inferences from the evidence." *State v. Gentry*, 125 Wn.2d 570, 641, 888 P.2d 1105 (1995).

A defendant's failure to object to a prosecutor's improper remark constitutes a waiver of such error unless the remark was "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice" that could not have been cured by an admonishment to the jury. *Stenson*, 132 Wn.2d at 719; *see also Gentry*, 125 Wn.2d at 596; *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991).

*Improper Questions*

Mr. Waits claims the State engaged in misconduct by knowingly and repeatedly asking every witness but S.Y. to comment on Ms. Eckerle's or Mr. Waits' credibility. We disagree that the State persistently asked improper questions.

A prosecutor is a representative of the people who acts in a quasijudicial capacity. *Monday*, 171 Wn.2d at 676. "Defendants are among the people the prosecutor represents." *Id*. Thus, a prosecutor owes a duty to ensure that a defendant's right to a fair trial is not violated. *Id*. Because the Rules of Evidence impose a duty on an attorney to prevent inadmissible evidence from reaching the jury, repeatedly asking witnesses questions a prosecutor knows to be objectionable is misconduct. *Teter v. Deck*, 174 Wn.2d 207, 223, 274 P.3d 336 (2012). The purposeful asking of improper questions places opposing counsel in the position of having to constantly object, giving the appearance they are attempting to hide something important. *Id.*

Generally, no witness may offer testimony in the form of an opinion regarding the veracity of another witness. *Kirkman*, 159 Wn.2d at 927. This type of testimony amounts to misconduct because it invades the province of the jury. *State v. Walden*, 69 Wn. App. 183, 186, 847 P.2d 956 (1993); *State v. Jerrels*, 83 Wn. App. 503, 507, 925 P.2d 209 (1996); *State v. Casteneda-Perez*, 61 Wn. App. 354, 360, 810 P.2d 74 (1991). "'Opinion testimony' is testimony that is 'based on one's belief or idea rather than on direct knowledge of the facts at issue.'" *State v. Fleeks*, 25 Wn. App. 2d 341, 368, 523

15

P.3d 220 (2023) (citing BLACK'S LAW DICTIONARY 1779 (11th ed. 2019)). However, it is not improper to point out the inconsistency in a witness's statements. *Walden*, 69 Wn. App. at 187. Testimony that does not directly address the credibility of another witness is not improper. *Kirkman*, 159 Wn.2d at 930.

In support of his argument, Mr. Waits directs us to 16 questions posed by the State to 5 different witnesses. The 16 questions can generally be separated into 3 categories: (1) questions lacking an objection from Mr. Waits or questions he objected to on a basis other than commenting on another witness's credibility; (2) questions where Mr. Waits successfully objected or the State withdrew its question after his objection; and (3) questions where Mr. Waits' objection was overruled. Of the 16 questions, Mr. Waits failed to object to 11 of the now-challenged questions, unsuccessfully objected to 1, and successfully objected to 4.

Because Mr. Waits failed to object to 11 of the alleged improper questions, he is burdened on appeal with demonstrating the questions were so flagrant and ill-intentioned that they evinced an enduring and resulting prejudice that could not have been remedied by an instruction to the jury. Mr. Waits has failed to make this showing.

The 11 questions Mr. Waits failed to object to called for a comment on the witness's direct knowledge of facts at issue—whether other witnesses offered conflicting

accounts.[5] None of the responses to the 11 questions provided an explicit expression of personal belief such as "I felt very strongly that[,]" or "we believe." *See State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008). Rather, the questions were intended to highlight either differing or inconsistent statements made by Mr. Waits and Ms. Eckerle. Thus, the questions were not designed to solicit the witness's own belief or idea of another witness's credibility but were instead intended to point out inconsistencies in the statements made by other witnesses. This was not improper.

Because the 11 questions were not improper, Mr. Waits has failed to establish that the prosecutor's conduct in asking the questions was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been remedied by an instruction to the jury.

---

[5] The 11 questions posed by the State without objection from Mr. Waits or objected to on other grounds are: "Throughout the interview of Mr. Waits did you note other—strange answers or inconsistent answers[?]" RP at 128; "Did you note certain contradictions or inconsistencies in answers given by the defendant in response to questions[?]" RP at 128; "What was it that seemed to—to cause the change in the answer[?]" RP at 129; "Later did that story stand up?" RP at 129; "Did that account change in light of the information that you provided to him[?]" RP at 129; "Did that story change[?]" RP at 129; "And at first did he deny that . . . But then later admitted it again[?]" RP at 129; "Was [Ms. Eckerle's] statement to law enforcement consistent with the statement that she had made to you when you first got home[?]" RP at 243; "So her story—stayed the same?" RP at 344; "Has his story changed?" RP at 344; "When you first asked him about the confrontation in the bed, what was his response[?]" RP at 143.

Mr. Waits objected to the State's question, "What was your impression of the defendant's description of Ms. Eckerle's diabetic, low sugar business[?]" RP at 138. The court overruled the objection. On appeal, Mr. Waits fails to assign error to the trial court's evidentiary ruling. Accordingly, we decline to review the evidentiary ruling and deem the question proper. *See* RAP 10.3(a)(3); RAP 2.5.

Mr. Waits successfully objected to four of the State's questions he alleges were intended to elicit comments on the credibility of Mr. Waits and Ms. Eckerle.[6] Although certain questions may have been improper, the prosecutor's presentation of a mere four objectionable questions does place the defense in a position of having to constantly object, leaving the jury with the impression Mr. Waits was attempting to hide something. *Teter*, 174 Wn.2d at 223.

In support of his argument, Mr. Waits cites *Teter* and *In re Personal Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Br. of Appellant at 53, 64. Both cases are distinguishable.

---

[6] "Is [Mr. Waits] trying to use that as an explanation for why[?]" RP at 138; "Do you think it's reasonable to mistake your five—then five-year-old daughter's body for your own body?" RP at 176; "And did the statement that [Ms. Eckerle] gave to the law enforcement officers was it the same as the basic statement that she'd give to you[?]" RP at 242; "Without commenting on credibility, did you find Mr. Waits' responses to questions concerning?" RP 251.

In *Teter*, offending counsel repeatedly ignored the court's instruction to refrain from speaking objections, put exhibits before the jury that had not been admitted, attempted to elicit testimony in violation of an order in limine, and persisted in this and other misconduct after the trial court threatened to fine her. 174 Wn.2d at 207.

*Glasmann* does not discuss objectional prosecutorial questions, but does provide a clear example of what constitutes "flagrant and ill-intentioned misconduct." 175 Wn.2d at 704. In *Glasmann*, the prosecutor presented Glasmann's booking photograph, showing him "unkempt and bloody" from a violent altercation with law enforcement. *Id.* at 705. Glasmann's booking photograph was accompanied by captions stating: "DO YOU BELIEVE HIM?"; "WHY SHOULD YOU BELIEVE ANYTHING HE SAYS ABOUT THE ASSAULT?"; and "GUILTY, GUILTY, GUILTY." *Id.* at 701-02.

These captions not only directly attacked Glasmann's credibility, but they injected the prosecutor's personal opinion of guilt into the case. *Id*. at 706-07. The court likened it to the prosecutor "shout[ing] in closing argument that 'Glasmann is guilty, guilty, guilty!'" *Id.* at 708. Moreover, the court emphasized that the visual presentation was particularly likely to manipulate the jury, especially during the critical closing moments of trial. *Id.* at 709-10. The prosecutor also shifted the State's burden of proof to Glasmann by arguing the "jurors could acquit Glasmann only if they believed him." *Id.* at 710.

Here, the State did not exhibit any of the behavior found in *Teter* and *Glasmann*. After the court warned the State that some of its questions called for opinion testimony, the State only asked one further question on the topic, which Mr. Waits did not object to. Moreover, the jury was instructed that they were "the sole judges of the credibility of each witness." CP at 53. Juries are presumed to follow the instructions that the trial court gives them. *State v. Keend*, 140 Wn. App. 858, 863, 166 P.3d 1268 (2007). The State reminded the jury of this obligation during its closing argument: "You are the sole judges of credibility of each witness. That's the law. That's your job. Judge their credibility. You are also the sole judges of the value or weight to be given the testimony of each witness." RP at 382-83.

We are unpersuaded that the four objectionable questions posed by the State rose to the level of misconduct. Even if we were to conclude otherwise, Mr. Waits has failed to demonstrate the questions created a substantial likelihood of affecting the jury's verdict.

*Comment to S.Y.*

Mr. Waits' second instance of alleged misconduct was a statement made by the prosecutor to S.Y. At the conclusion of S.Y.'s testimony, the prosecutor remarked, "Thank you. I don't have any more questions for you. You did great." RP at 225. Mr. Waits did not object. Under the circumstances, we disagree this statement amounts to misconduct.

20

The prosecutor's comment was directed at a child witness who testified against an adult she considered a father figure. S.Y. testified before a courtroom full of adults about sexual acts she may not have been capable of fully comprehending. She was subject to cross-examination by Mr. Waits' attorney, causing her to repeat much of her testimony. In viewing the prosecutor's statement, "You did great," in context of the circumstances, the comment was not intended as an endorsement of her testimony, but rather to encourage a child at the conclusion of a stressful situation. RP at 225. When viewed in context, the prosecutor's comment to S.Y. was neither improper nor prejudicial.

### *Comments During Closing Argument*

Mr. Waits next contends the prosecutor presented inflammatory and disparaging comments during closing argument. Mr. Waits failed to object to the prosecutor's comments.

The prosecutor stated during closing argument:

This is a hard case. It's not easy. Anyone who can sit through this type of case and not have a reaction, *there's something wrong with them.* Anyone who can sit here and blithefully talk about remembering movie lines, when we're talking about sexually abusing a five-year-old child, *there's [s]omething wrong with that person.*

RP at 395 (emphasis added). Later, during rebuttal, the prosecutor argued:

Texting Jason. "That doesn't make any sense. Why would she try and get him to come back—after he'd done these horrible things to the child." She told you. She told you. She used the word "luring him back." She needed him at the house so that he could be confronted by law enforcement. He was out someplace she didn't know. She was afraid what

21

would happen if he found out that she was reporting it. She told you that. She needed—to trap him. So she texted him.

And what was it. What was the piece of cheese that drew the rat. It wasn't, "Gosh, she's crying her eyes out about the pool party." What was it that she did to lure the defendant back to where he could be arrested. "I need you to watch [S.Y.]." "I'm going to give you a chance to be alone with the child again—if you come back." She didn't intend to. And you may think that that's horrible thing for a mother to do to use her child—*as bait to catch a predator.* But she told you why she sent the texts, why she wanted him to come back. Because she wanted to be safe. And she wanted her daughter to be safe.

RP at 411-12 (emphasis added).

In support of his contention that the prosecutor's argument amounted to misconduct, Mr. Waits directs us to *State v. Rivers*, 96 Wn. App. 672, 981 P.2d 16 (1999). In *Rivers*, the court found the prosecutor had committed misconduct during closing argument when he referred to Rivers and the other alleged assailants as "predators," stating, "[t]hey are nothing more than hyenas." *Id.* at 673. There, the prosecutor read the definition of "jackal" to the jury and commented that "[t]hat's what these four young men were. They were jackals." *Id.* The prosecutor continued his attack, referring to Rivers' witnesses, who were dressed in orange jail coveralls when they testified, as the "pajama crowd." *Id.* at 674. The prosecutor insinuated that the "pajama crowd" had an ulterior motive, sarcastically stating, "Can you imagine how they would be welcomed in the shower? Absolutely no incentive for them to come in here and say that the defendant was involved?" *Id.*

22

While the prosecutor's comments were improper, the statements fall short of the inflammatory language of *Rivers*. Rather, the State offered a lone comment about Mr. Waits' presentation and a fairly innocuous statement intended to support its argument of Ms. Eckerle's unusual response to Mr. Waits' actions. Further, Mr. Waits has failed to establish that these comments created a substantial likelihood of affecting the jury's verdict. Consequently, the prosecutor's arguments do not rise to a level of being so flagrant and ill-intentioned that they evince an enduring and resulting prejudice that could not have been cured with a jury instruction.

### *Appeal to the Emotions of the Jury*

Mr. Waits next claims the State improperly appealed to the emotions of the jury. Without objection from Mr. Waits, the prosecutor stated during closing argument:

> If you are not convinced beyond a reasonable doubt, you cannot convict him. But if you know—that based on what you heard, that based on the evidence that was presented, that you have passed reasonable doubt, and that you have an abiding belief—not a fleeting belief, not a "Hm, maybe," but an abiding belief in the truth of the charges you must—convict. You must find him guilty. That's what the law says. *That's what your heart tells you.*

RP at 396 (emphasis added).

While "That's what your heart tells you" is not the standard for a jury to determine guilt, in viewing the prosecutor's comment in context of the entire argument, the jury was clearly informed they were not to "decide the case on emotion." RP (Aug. 14, 2020) at 396. Prior to the objectionable comment, the prosecutor argued:

23

> Don't decide this case on emotion. And if I get emotional, I'm sorry.
> Emotion is not the measure. Common sense, reasonable thought, carefully
> considering the evidence is the measure. If you are not convinced beyond a
> reasonable doubt, you cannot convict him.

RP at 396. Viewed in context of the State's entire argument, the prosecutor's comment

of "That's what your heart tells you" is not improper nor prejudicial. *Id.* Thus, the

comment does not rise to a level of being so flagrant and ill-intentioned that it evinces an

enduring and resulting prejudice that could not have been cured with a jury instruction.

*Storytelling*

Mr. Waits next contends that the prosecutor offered a personal story during

closing argument to introduce facts not in evidence and to invite the jury to imagine

themselves in Ms. Eckerle's position.

During summation, attorneys are precluded from presenting argument that is

unsupported by evidence presented during the trial. *State v. Schierman*, 192 Wn.2d 577,

640, 438 P.3d 1063 (2018).

Here, during voir dire the prosecutor shared with the venire a story about working

a graveyard shift at a convenience store while in law school. The State revisited the story

during rebuttal argument, without objection from Mr. Waits. The story was shared after

Mr. Waits' closing argument and was intended to counter the assertion that Ms. Eckerle's

account was "bizzare" and "stretches common sense." RP at 397, 399.

24

In the context of the totality of both parties' closing arguments, the court's instruction that the jury "remember that the lawyers' statements are not evidence," and that the "evidence is the testimony and the exhibits," and in granting wide latitude to the parties to draw and express reasonable inferences from the evidence, the prosecutor's story was neither improper nor prejudicial. CP at 365. Accordingly, the prosecutor's argument falls short of being so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been cured with an admonishment to the jury.

*Appeal to the Jurors' Emotions and Prejudice*

Mr. Waits claims the prosecutor offered argument that improperly appealed to the emotions and prejudices of the jurors. During summation, the prosecutor stated:

> What would you do if someone you loved, who you had invested two years of your life into, who you had given your five-year-old child to to care for, who you had allowed to potty train and bathe and dress your daughter. What would you do if you walked in and saw—he was molesting her. Would you do what [Ms. Eckerle] did and say, "I can't believe it, I refuse to believe it, I'm—I'm in shock, I'm in trauma, I didn't see what I just saw. I don't believe my own eyes.

RP at 416. Mr. Waits did not object.

The prosecutor's argument unquestionably ventured into an appeal to emotions and prejudices. However, in reviewing the State's improper comment in the context of the State's entire argument, it seems the State was attempting to address Ms. Eckerle's perceived unorthodox behavior toward Mr. Waits after he committed sexual offenses against S.Y. Because the improper argument was limited to rationalizing Ms. Eckerle's

25

behavior toward Mr. Waits, we are unconvinced that the argument was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an instruction to the jury.

EFFECT OF CUMULATIVE ERROR

Mr. Waits argues the five instances of prosecutorial misconduct resulted in cumulative error that deprived him of a fair trial.

"Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). To prevail under the cumulative error doctrine, an appellant must show that while multiple errors "standing alone . . . might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial." *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984).

Here, Mr. Waits' assertion that he was deprived of a fair trial boils down to two instances of unpreserved improper comments by the prosecutor. As previously discussed, independently, neither instance of improper comments created a substantial likelihood of affecting the jury's verdict. Likewise, in reviewing the totality of the State's argument, the two improper comments collectively did not produce a trial that is fundamentally unfair. Cumulative errors did not deprive Mr. Waits of a fair trial.

26

WHETHER MR. WAITS WAS AFFORDED INEFFECTIVE ASSISTANCE OF COUNSEL

In the event we were to conclude Mr. Waits waived his claim of prosecutorial misconduct based on his trial counsel's failure to object, Mr. Waits asserts he was afforded ineffective assistance of counsel. Br. of Appellant at 85.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

To succeed on a claim of ineffective assistance of counsel, an appellant bears the burden of showing that his trial counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, there is a reasonable probability that but for trial counsel's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "If either element . . . is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that trial counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on

a defendant alleging ineffective assistance of counsel to show deficient representation. *Id.* "The reasonableness of trial counsel's performance is to be evaluated from [trial] counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When [trial] counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

A defendant must affirmatively prove prejudice, not simply show that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by demonstrating that the proceedings would have been different but for trial counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

Mr. Waits claims "there was no strategic reason for objecting to some but not all of the prosecutor's questions designed to elicit inadmissible opinions of [Ms.] Eckerle's and [Mr.] Waits' credibility" and in failing "to lodge a single objection to the prosecutor's repeated misconduct in closing and rebuttal." Br. of Appellant at 86-87.

Of Mr. Waits' six claimed occurrences of misconduct, we conclude only a few questions and two minor arguments were improper, and that Mr. Waits failed to establish prejudice. Consequently, Mr. Waits' trial counsel was not ineffective in failing to object to questions or arguments aside from the instances previously discussed. Furthermore, defense counsel may have refrained from objecting as a trial tactic. Similar to the

28

prosecutor's perceived appeal to the emotions and prejudices of the jury, defense counsel argued:

> *Imagine the shame and embarrassment to find yourself in that position.* It's hard to come up with—a perfect, articulable way to say, "I didn't mean it." You're shocked. He was shocked. "Whoa, whoa, whoa." "Didn't do that." "I didn't mean it."

RP at 405 (emphasis added). Defense counsel *also* made argument that appealed to the emotions of the jurors. As such, it may have looked hypocritical to a jury for defense to object to the State's similar appeal. This is a legitimate trial tactic.

Moreover, Mr. Waits has failed to establish prejudice by demonstrating that the proceedings would have been different but for trial counsel's failure to object to a few questions and to the prosecutor's two improper arguments.

Even if defense counsel was ineffective, Mr. Waits has failed to establish that the proceedings would have been different but for trial counsel's failure to object to a few questions and two arguments presented by the State. Mr. Waits was not afforded ineffective assistance from his trial counsel.

WHETHER MR. WAITS IS ENTITLED TO RELIEF FROM VARIOUS COMMUNITY CUSTODY CONDITIONS AND LEGAL FINANCIAL OBLIGATIONS

Mr. Waits challenges several community custody conditions and legal financial obligations.

The imposition of crime-related prohibitions is fact specific and based upon "the sentencing judge's in-person appraisal of the trial and the offender." *In re Pers. Restraint*

29

*of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). As such, we review them under the abuse of discretion standard. *Id.* at 374. A judge abuses their discretion in imposing community custody conditions in violation of the legal parameters set by RCW 9.94A.703. *See State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). It is also an abuse of discretion to impose unconstitutional conditions of community custody. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). Judicial discretion "means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

*No Contact with Minors*

Mr. Waits claims the order prohibiting him from contact with minors without permission from his community corrections officer violates his right to parent his four minor children. We disagree.

The right to parent without interference from the State has been recognized as a fundamental constitutionally protected liberty interest. *See In re Custody of Smith*, 137 Wn.2d 1, 14-15, 969 P.2d 21 (1998). Preventing harm to children is a compelling state interest. *State v. Ancira*, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001). Consequently, a sentencing court may impose on the right to parent when it is reasonably necessary to further the State's compelling interest to protect children. *State v. Letourneau*, 100 Wn. App. 424, 438, 997 P.2d 436 (2000).

When a court sentences a person to a term of community custody, the court shall impose conditions of community custody as provided in RCW 9.94A.703. A court may also impose discretionary conditions, including a restriction that the offender "[r]efrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.703(3)(b).

Here, the court restricted Mr. Waits from having contact with minors, including his own children. In entering the order, the court considered, among other information, a statement from Mr. Waits' former wife with whom he has two children in common. His former wife explained the tremendous impact Mr. Waits' behavior had on their children and described Mr. Waits' continuous failure to accept responsibility for his actions and inability to comply with court orders. In accentuating her observations, the State directed the court to Mr. Waits' pretrial conduct. Within two hours of being released from jail after a bond reduction, Mr. Waits violated his conditions of release by purchasing beer. The next day, Mr. Waits again violated the pretrial order by having contact with his minor children. When the court ordered Mr. Waits not to have contact with minors, it highlighted Mr. Waits' "fatherly type role" to S.Y. and how he took advantage of that role. RP (Dec. 7, 2020) at 513.

It is within the court's discretion to order crime-related restrictions. *State v. Howard*, 182 Wn. App. 91, 100-01, 328 P.3d 969 (2014). "A no contact order is a crime-related prohibition." *Id.* at 101. Although the no contact order prohibits Mr. Waits from

having contact with minors, the order offers Mr. Waits the ability to have contact with the permission of his community corrections officer. The no contact order was reasonably necessary to further the compelling state interest of protecting minors but was no more restrictive than necessary given his crimes and Mr. Waits' demonstrated inclination to disobey court orders.

The trial court did not abuse its discretion in restricting Mr. Waits from having contact with minors.

### *Restitution for S.Y.'s Counseling Fees*

Mr. Waits contends the community custody condition that he "[p]ay for any fees that may be generated from counseling for the victim" is not authorized by the Sentencing Reform Act of 1981, chapter 9.94A RCW. CP at 145. Without conceding the legal basis cited by Mr. Waits, the State agrees the condition should be struck.

RCW 9.94A.753(1) provides, in part, "When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within 180 days." RCW 9.94A.753(3)(a) limits the amount of restitution to "easily ascertainable damages for . . . actual expenses incurred for treatment for injury to persons."

Here, the trial court did not determine the amount of restitution at sentencing nor within 180 days thereof. Further, the trial court did not limit the amount of restitution to the actual expenses incurred for S.Y.'s treatment. Rather, the court's order leaves the

duration of S.Y.'s counseling and amount of restitution owed by Mr. Waits to the discretion of the Department of Corrections.

We remand for the trial court to strike the condition that Mr. Waits "[p]ay for any fees that may be generated from counseling for the victim" from Appendix H(b)(6) to his judgment and sentence. CP at 162.

*Restriction on Controlled Substances*

Mr. Waits contends the trial court exceeded its authority when it ordered two community custody conditions that restricted his ability to possess or consume controlled substances. Without conceding the legal basis cited by Mr. Waits, the State agrees one condition should be amended and the other struck. We accept the State's concession.

Mr. Waits' judgment and sentence incorporated Appendix A and Appendix H. Among other conditions, Appendix A requires Mr. Waits "not consume and/or possess controlled substances unless prescribed by a physician." CP at 160. Similarly, Appendix H(b)(8) provides, "Do not consume or possess any controlled substance, unless prescribed by licensed practicing physician." CP at 162.

Unless waived by the court, RCW 9.94A.703(2)(c) requires the trial court to order that an offender subject to community custody "[r]efrain from possessing or consuming controlled substances except pursuant to *lawfully issued prescriptions*." (Emphasis added.) However, RCW 69.41.030 authorizes healthcare professionals other than physicians to order or prescribe legend drugs.

33

Here, the record is void of any facts warranting a restriction on Mr. Waits' ability to possess or consume controlled substances beyond that specified in RCW 9.94A.703(2)(c). Accordingly, the trial court arbitrarily restricted Mr. Waits' access to legend drugs.

We remand for the trial court to strike, "Shall not consume and/or possess controlled substances unless prescribed by a physician" from Appendix A because it is superfluous to Appendix H(b)(8). CP at 160. As to Appendix H(b)(8), we direct the trial court to amend, "Do not consume or possess any controlled substance, unless prescribed by licensed practicing physician" to "Refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." CP at 162; RCW 9.94A.703(2)(c).

### *VPA and DNA Collection Fee*

Mr. Waits contends it was improper for the trial court to order him to pay the VPA and DNA collection fee due to his indigency. Although the trial court found Mr. Waits possessed the present and future ability to pay the legal financial obligations, the State requests we remand for the trial court to determine whether Mr. Waits is indigent.

Prior to July 1, 2023, imposition of a VPA was mandatory for any individual found guilty of a crime in superior court. Former RCW 7.68.035(1)(a) (2018). However, Engrossed Substitute H.B. 1169, 68th Leg., Reg. Sess. (2023), amended RCW 7.68.035 to provide, "The court shall not impose the penalty assessment under this section if

34

the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1.  Generally, when a statute is amended while a case is pending on direct appeal, the amendment will apply.  *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Pursuant to former RCW 43.43.7541 (2018), the trial court was required to impose a $100 DNA collection fee for every sentence imposed for the crimes specified in RCW 43.43.754.  Effective July 1, 2023, the legislature amended RCW 43.43.7541 by eliminating language that made imposition of the DNA collection fee mandatory.  *See* LAWS OF 2023, ch. 449, § 4.

At the time of Mr. Waits' sentencing, the trial court found "the Defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.142."  CP at 152.  The same day, the trial court entered an "Order of Indigency," that authorized Mr. Waits to appeal at public expense.  CP at 166-67. Because the trial court found Mr. Waits indigent on the day he was sentenced, he is entitled to the benefit of the statutory amendments.  Accordingly, we remand for the trial court to strike the VPA and DNA collection fee from Mr. Waits' judgment and sentence.

*Community Custody Supervision Fees and Polygraph Testing Expenses*

Mr. Waits contends RCW 9.94A.703(2) prohibits the trial court from imposing community custody supervision fees.  The State concedes.  We accept the State's concession.

Effective July 1, 2022, RCW 9.94A.703(2) no longer authorizes the imposition of community custody supervision fees. *State v. Ellis*, 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023). Generally, when a statute is amended while a case is pending on direct appeal, the amendment will apply. *Ramirez*, 191 Wn.2d at 748-49. Because Mr. Waits' case is pending on direct appeal, he receives the benefit of the amendment. We remand for the trial court to strike the community custody supervision fees from Mr. Waits' judgment and sentence.

Mr. Waits next argues the expense of polygraph testing amounts to a community custody supervision fee. Specific to the facts before us, we agree.

The trial court incorporated Appendix H into Mr. Waits' judgment and sentence. In part, Appendix H(b)(11) requires Mr. Waits to "[s]ubmit to and pay for any polygraph examination, as directed by his Supervising Officer or the sexual deviancy treatment provider." CP at 162. Because the polygraph testing is ordered by a community corrections officer for the purpose of monitoring Mr. Waits' compliance with the terms of his community custody, the expense amounts to a community custody supervision fee. LAWS OF 2022, ch. 29, § 8(2)(d); *see* RCW 9.94A.703.

We remand for the trial court to strike the condition requiring Mr. Waits to pay for polygraph testing from Appendix H.

*Interest on NonRestitution Legal Financial Obligations*

Mr. Waits contends RCW 10.82.090(1) precludes the court from ordering interest on nonrestitution legal financial obligations. Although at the time of sentencing Mr. Waits failed to object, the State concedes. We accept the State's concession.

Effective June 7, 2018, "no interest shall accrue on nonrestitution legal financial obligations." RCW 10.82.090(1). Here, the trial court ordered interest on Mr. Waits' legal financial obligations, including nonrestitution amounts. Accordingly, we remand for the trial court to strike the interest on nonrestitution legal financial obligations from Mr. Waits' judgment and sentence.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." Mr. Waits raises four additional grounds for review. We address each in the order presented.

*First SAG*

In his first SAG, Mr. Waits argues his rights under the Fourth Amendment were violated when law enforcement officers entered the curtilage of his home and arrested him without a warrant. Alternatively, if we conclude law enforcement's entry onto the curtilage of his home was lawful, Mr. Waits asserts the statements he made to law

37

enforcement should have been suppressed because he did not waive his rights under

*Miranda*, 384 U.S. 436. We disagree with his first contention and decline review of the

second.

Mr. Waits directs us to *Florida v. Jardines,* 569 U.S. 1, 133 S. Ct. 1409, 185 L.

Ed. 2d 495 (2013), to advance his argument that the curtilage to his home deserves the

same protection as the interior. We disagree with his interpretation of *Jardines*.

For purposes of the Fourth Amendment, *Jardines* did not hold that the curtilage of

a house must be treated the same as the interior of the home. Rather, the issue in

*Jardines* was whether law enforcement could use a dog to sniff for drugs within the

curtilage of Jardines' house without a search warrant. *Id*. at 3. Notably, *Jardines*

confined police activity within the curtilage to activities that the occupant would likely

consider reasonable for the general public to engage in, such as walking up to the front

door and knocking with the hopes of being received by the occupant. *Id.* at 8.

Generally, law enforcement officers who are not armed with a warrant enjoy the

same license to approach a residence and knock on the door as a private citizen.

*Kentucky v. King*, 563 U.S. 452, 469, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011). The

occupant of the residence has no duty to open the door nor to speak with the officers.

*Kentucky*, 563 U.S. at 470. Absent coercion by law enforcement officials, an occupant

who exits their residence may be arrested without a warrant if officers have probable

cause. *State v. Solberg*, 122 Wn.2d 688, 701, 861 P.2d 460 (1993).

Here, law enforcement officers approached Mr. Waits' residence to speak with him after receiving a complaint of sexual misconduct. Ex. P-1 at 00:30:44. After officers knocked on Mr. Waits' door, Mr. Waits belatedly answered the door and voluntarily exited his residence. A warrant was not required for the officers to enter the curtilage of Mr. Waits' home with the hope of speaking to him.

Citing *United States v. Lundin*, Mr. Waits argues the officers violated the Fourth Amendment when they approached his residence with the subjective intent to arrest him. 817 F.3d 1151 (9th Cir. 2016). *Lundin* is factually distinguishable. There, police dispatch broadcasted a request for Lundin's arrest. *Id.* at 1160. In response, officers went to Lundin's residence for the sole purpose of arresting him. *Id*. Here, it is unclear whether the encounter between Mr. Waits and the officers would result in an arrest. Indeed, the officers spoke with Mr. Waits for nearly 30 minutes before deciding they had probable cause to arrest him.

Law enforcement's entry onto the curtilage of Mr. Waits' home was not violative of Mr. Waits' Fourth Amendment rights.

In light of our ruling on Mr. Waits' Fourth Amendment claim, he requests we review the admissibility of statements he made to the officers. In support of his argument, Mr. Waits cites to one sentence in the record, "'I don't want to waive my rights, but I'll talk to you.'" SAG at 22 (quoting RP at 56).

On September 3, 2019, the trial court conducted a CrR 3.5 hearing. At the conclusion of the hearing, the trial court entered findings of fact and conclusions of law. Because Mr. Waits fails to even mention the CrR 3.5 hearing, let alone challenge any of the findings of fact, they are treated as verities on appeal. *Stenson*, 132 Wn.2d at 697. The record contains substantial evidence to support the trial court's determination that Mr. Waits was not in custody when he spoke to the officers and that Mr. Waits voluntarily waived his rights when he freely decided to speak with the officers.

*Second SAG*

In his second SAG, Mr. Waits claims his rights under the Sixth Amendment and Fourteenth Amendment were violated when the trial court ordered an "exceptional life sentence without any aggravating circumstances being plead or proven to the jury." SAG at 24. We disagree.

Citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), Mr. Waits contends he should not have been sentenced to a term of up to life imprisonment. In part, *Blakely* held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.

*Blakely*, 542 U.S. at 296 (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). Both of Mr. Waits' convictions are class A felonies. A class A felony is punishable "by confinement in a state correctional

institution for a term of life imprisonment." RCW 9A.20.021(1)(a). Both of Mr. Waits'

convictions also fall under RCW 9.94A.507(1)(a)(i) and (iii), subjecting him to the

provisions of RCW 9.94A.507(5). RCW 9.94A.507(5) states:

> When a court sentences a person to the custody of the department under this section, the court shall, in addition to the other terms of the sentence, *sentence the offender to community custody* under the supervision of the department and the authority of the board *for any period of time the person is released from total confinement before the expiration of the maximum sentence*.

(Emphasis added.)

Any claimed aggravating circumstances need not have been pleaded or proved to

the jury because Mr. Waits was sentenced within the prescribed statutory maximum for

each offense. Mr. Waits' sentence of up to life imprisonment did not transgress on his

rights under the Sixth Amendment or Fourteenth Amendment.

### Third SAG

In his third SAG, Mr. Waits argues he was denied his Sixth Amendment right to

counsel at the May 28, 2019, preliminary appearance,[7] a hearing Mr. Waits claims was a

---

[7] The trial court's order refers to the hearing as a "BOND HEARING." CP at 174. The RPs refer to the hearing as a "PROBABLE CAUSE HEARING." RP (May 28, 2019) at 4. The hearing appears to have been a preliminary appearance under CrR 3.2. For the sake of consistency, we refer to the CrR 3.2 hearing as a "preliminary appearance."

critical stage of the litigation.  Although it was error to allow Mr. Waits to appear without counsel, the error was harmless.

Our Supreme Court has recognized that "[a] person facing criminal charges needs counsel at their first preliminary appearance to protect their constitutional rights while the court decides bail and other important questions." *State v. Heng*, 2 Wn.3d 384, 391, 539 P.3d 13 (2023).  Consequently, the failure to have counsel present for Mr. Waits' preliminary appearance was error.  *Id.*  However, not all constitutional errors are structural.  To determine whether an error is structural, we assess whether the preliminary appearance was a critical stage of the proceedings.

Here, the preliminary appearance was not a critical stage of the proceedings.  Mr. Waits lost no rights, waived no defenses, and neither claimed nor waived any privileges.  Moreover, Mr. Waits did not lose his ability to challenge bond.  Rather, the court allowed Mr. Waits to argue bond, but also designated the bond amount as temporary since Mr. Waits had yet to have been appointed counsel.  Mr. Waits' case was not demonstrably affected by a lack of counsel at the preliminary hearing.  Because the preliminary appearance was not a critical stage of the proceedings, the error was not structural.  Therefore, we turn to the constitutional harmless error analysis.  *Orn*, 197 Wn.2d at 359.

Rather than argue the error contributed to the verdict, Mr. Waits claims the error was structural, mandating automatic reversal.  SAG at 42.  We fail to draw a correlation between Mr. Waits' preliminary appearance and the verdict.  The focus of Mr. Waits'

defense was to attack Ms. Eckerle's credibility and present S.Y. as a victim who had been coached. Nothing from the preliminary appearance affected the evidence presented at trial nor Mr. Waits' ability to challenge the evidence. We are persuaded beyond a reasonable doubt that the order setting bond without Mr. Waits having counsel present did not contribute to the verdict.

### *Fourth SAG*

In his fourth SAG, Mr. Waits contends a "portion of the record [report of proceedings] that is missing is of critical importance to an abuse of discretion claim on appeal." SAG at 43. We disagree.

A criminal defendant is "constitutionally entitled to a 'record of sufficient completeness' to permit effective appellate review of his or her claims." *State v. Thomas*, 70 Wn. App. 296, 298, 852 P.2d 1130 (1993) (quoting *Coppedge v. United States*, 369 U.S. 438, 446, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962)). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20, 76 S. Ct. 585, 100 L. Ed. 891 (1956)).

As an initial matter, Mr. Waits advances this argument for the second time. We earlier addressed the completeness of the record, as did the Supreme Court. *State v. Waits*, 20 Wn. App. 2d 800, 502 P.3d 878, *aff'd in part and remanded*, 200 Wn.2d 507,

520 P.3d 49 (2022). Here, the report of proceedings was substantially recreated such that Mr. Waits has now been able to raise alleged errors.

Mr. Waits directs us to portions of the report of proceedings designated as "inaudible."[8] Although these sections are notated with "inaudible," the record is sufficiently complete to allow Mr. Waits the ability to identify specific issues contained in each section. Moreover, Mr. Waits fails to identify a specific error that cannot be fully discerned because he believes the record is incomplete. Rather, he argues he is unable to discern whether an error exists.

Mr. Waits is not entitled to a flawless record, but a record of sufficient completeness for effective review. Based on the myriad of issues raised on appeal, Mr. Waits has demonstrated the record has been recreated to sufficient completeness for our review.

## CONCLUSION

We affirm Mr. Waits' convictions and sentence and remand for the trial court to strike the conditions that Mr. Waits "[p]ay for any fees that may be generated from counseling for the victim" and pay for polygraph testing from Appendix H(b)(6). CP at 96. We further direct the trial court to amend, "Do not consume or possess any controlled substance, unless prescribed by licensed practicing physician" to "Refrain

---

[8] RP at 162-67; RP at 187-91; RP at 315; and RP at 346.

No. 37894-2-III
*State v. Waits*

from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions" (CP at 96) and to strike the VPA, the DNA collection fee, and the interest on nonrestitution legal financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.